**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID JENKINS** | : | **Case No. 09CV525** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **CENTRAL TRANSPORT, INC., et al.,** | : | **MEMORANDUM & ORDER** |
| **Defendants.** | : | |

This matter arises upon Plaintiff Daniel Jenkins' ("Jenkins") *Motion to Remand* (Doc. 19) and Defendants' Central Transport, Inc. ("CTI") and John Matthews (collectively, the "Defendants") *Brief in Opposition to Plaintiff's Motion for Remand*. For the reasons articulated below, Plaintiff's motion is **GRANTED**. Accordingly, this matter is hereby remanded to the Medina County Court of Common Pleas.[1]

I.    **BACKGROUND**

Defendant CTI employed Plaintiff Daniel Jenkins as an over-the-road truck driver prior to October 2008. On October 22, 2008, Jenkins was involved in a major vehicle accident. Plaintiff claims that the accident was not his fault; instead, he alleges that the accident was caused by the poorly maintained brakes on his vehicle. Plaintiff further charges that he had previously advised CTI of the brake issue and criticized CTI's overall failure to properly maintain its truck fleet.

Following the accident, CTI reviewed and investigated what happened. According to emails

---

[1]Defendants have also filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 5). However, in light of this ruling, the Court can no longer consider Defendants' dispositive motion due to lack of jurisdiction.

provided by the defense, Ted Matthews, CTI's Safety Department Manager, and Kirk Cummings, the President of CTI, jointly made the decision to terminate Jenkins on the basis of his accident. Their decision was communicated via email to John Matthews, Jenkins' Terminal Manager at CTI in Brookpark, Ohio. John Matthews then informed Jenkins that he had been fired, but that he had a right to appeal his termination.[2] Jenkins appealed the decision, and CTI's Employee Termination Review Board held a telephonic meeting to evaluate the decision to fire Jenkins. John Matthews sat in on the phone call, but said nothing. Following the call, there was a consensus that CTI should uphold the termination decision. CTI maintains that this decision was made because of Jenkins' major vehicle accident.

Jenkins, however, claims that he was actually fired in retaliation for complaining about the safety issues with CTI's trucks. In *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St. 3d 228, 233-34 (1990), the Ohio Supreme Court recognized a public-policy exception to the employment-at-will doctrine. An employer may not terminate an employee for a reason that is contrary to the clear public policy of this state. *Painter v. Graley*, 70 Ohio St. 3d 377, 382 (1994). On February 9, 2009, Jenkins filed a *Greeley*-based complaint in the Medina County Court of Common Pleas. He alleges that, under Ohio Rev. Code §§ 4101.11 and 4101.12, there is a clear Ohio public policy favoring workplace safety, and that Defendants' firing of him for complaining

---

[2]The Court notes Plaintiff's possible confusion of Ted Matthews, who clearly made the decision to terminate Jenkins, with *John* Matthews, who simply informed Jenkins that he had been fired. Clearly, if Plaintiffs are seeking to sue the person with responsibility for firing Jenkins, they would have a much better case against Ted Matthews, since there is evidence showing that he in fact was responsible for the decision to terminate Jenkins. Whether this was a confusion of names, a failure to investigate who actually made the termination decision, or a strategic move because Ted Matthews is not citizen of Ohio, are all interesting questions, but ultimately not relevant here. A plaintiff's motives in joining a party are immaterial to a fraudulent joinder analysis. *Jerome-Duncan*, *Inc.* v. *Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).

-2-

about the safety of CTI's truck fleet violates this public policy. Jenkins filed his claim against CTI as a corporate entity *and* individually against his supervisor, John Matthews.

In response, Defendants filed a *Notice of Removal* on March 9, 2009, claiming that diversity jurisdiction exists because Plaintiff fraudulently joined Defendant John Matthews. It is undisputed that Jenkins is an Ohio citizen, CTI is a Michigan corporation, and John Matthews is an Ohio citizen. Therefore, diversity jurisdiction only exists and validates removal if John Matthews was fraudulently joined, i.e., if his presence in the lawsuit defeats diversity jurisdiction under circumstances in which no colorable cause of action exists against him. *See Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994); *City of Cleveland v. Deutsche Bank Trust Co.*, 571 F. Supp. 2d 807, 824 n.27 (N.D. Ohio 2008).

## II.    **STANDARD OF REVIEW**

Diversity jurisdiction only exists if all of the parties on one side of an action have different citizenship than all of the parties on the other side of the action. *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999) (citations omitted). If the parties are not completely diverse, removal is improper and a court should order remand. However, a plaintiff cannot join a non-diverse defendant against whom he has no real possibility of recovery simply in order to avoid federal jurisdiction. *Id.* at 493 (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). "[F]raudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Id.* The burden of proving fraudulent joinder is upon the moving party. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citations omitted).

To prove fraudulent joinder, the removing party must show that there is no "reasonable basis" upon which liability may be imposed upon the non-diverse party. *Alexander*, 13 F.3d at 949; *Stanley*

*v. Deluxe Fin. Servs. Inc.*, No. 1:08CV2149, 2009 WL 929029, at *2 (N.D. Ohio Apr. 2, 2009). The

removing party must show that either "there can be no recovery under the law of the state on the

cause alleged or on the facts in view of the law." *Alexander*, 13 F.3d at 949. The Sixth Circuit has

recognized that "if there is a colorable basis for predicting that a plaintiff may recover against non-

diverse defendants, [a court] must remand the action to state court." *Id.* In deciding whether a

colorable claim exists, a Court must resolve "all disputed questions of fact and ambiguities in the

. . . state law" in favor of the non-removing party. *Id.* Indeed, the fraudulent joinder standard is even

more deferential to a plaintiff than the standard applicable to a motion to dismiss under Rule 12(b)(6)

of the Federal Rules of Civil Procedure. *See Leiken Oldsmobile, Inc. v. Sentry Select Ins. Co.*, No.

1:08 CV 1695, 2008 WL 4686170, at *2 (N.D. Ohio Oct. 22, 2008); *Little v. Purdue Pharma, L.P.*,

227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002). Whether or not a claim actually exists is a question

more properly submitted to the court with subject matter jurisdiction; this Court's task is to decide

only whether there is some possibility that Plaintiff could have a claim against Defendant John

Matthews under state law, and any doubts must be resolved in favor of remand. *Coyne*, 183 F.3d

at 493.

## III.  <u>ANALYSIS</u>

Defendants posit four reasons why joinder of John Matthews was fraudulent. First,

Defendants claim that Plaintiff cannot rely on Ohio Rev. Code §§ 4101.11 and 4101.12 (the

"frequenters statutes") as a source of public policy preventing termination for reporting workplace

safety violations because those statutes are "obsolete." Second, Defendants argue that, even if

Plaintiff can bring a tort claim based on the frequenters statutes, such a claim cannot be brought

against an *individual* such as Defendant John Matthews. Third, Defendants claim that, even

-4-

assuming an individual could be liable under the frequenters statutes, John Matthews in any event does not qualify as such an individual because he is not an "employer" who had any responsibility for the decision to terminate Jenkins.  Finally, as an independent reason to dismiss the claim against John Matthews, Defendants argue that Plaintiff cannot rely on the frequenters statutes for a public-policy tort remedy since an adequate statutory remedy already exists in 49 U.S.C. § 31105.  The Court will address each of these arguments in turn.

### A.    Ohio Rev. Code §§ 4101.11 and 4101.12 Are Not Obsolete for Purposes of Plaintiff's Claim, and Can Form the Basis for a *Greeley* Action

Initially, Defendants challenge the basis for the public policy on which Plaintiff's claims are founded, Ohio Rev. Code §§ 4101.11[3] and 4101.12[4].  Defendants seem to be stating that such a claim

---

[3]Ohio Rev. Code § 4101.11 states:

> "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

[4]Ohio Rev. Code § 4101.12 states:

> "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

is untenable because, since the passage of Ohio's Workers Compensation law, §§ 4101.11 and 4101.12 have been rendered "obsolete."

This argument fails as both a semantic and as a substantive matter.  First, "obsolete" does not mean "repealed," "overturned," or any variation of "unavailable for use."    Ohio Rev. Code §§ 4101.11 and 4101.12 are still on the books, alive and well.  The frequency with which a statute is used for recovery does not diminish its usefulness to the citizens of this state.  The statutes may not be oft-cited, but Defendants cannot use statistical rates of use to write a statute out of the Ohio Revised Code.

Furthermore, even if 4101.11 and 4101.12 are largely "obsolete," it is only for actions other than the type Plaintiff brings here.  The reason that 4101.11 and 4101.12 are not used as a basis for lawsuits as frequently as before is obviously due to the passage of Ohio's Worker's Compensation laws, as Defendants note.  Before the passage of the Worker's Compensation laws, 4101.11 and 4101.12 served as a basis for bringing an action against an employer for injury in the workplace.  Worker's Compensation statutes now explicitly give workers the right to sue after workplace injuries, so 4101.11 and 4101.12 are no longer relied on *when an employee is injured*.  However, the current action is not a suit for recovery after physical injury.  Indeed, Plaintiff alleges no injury and seeks no medical recovery costs.  Therefore, the Worker's Compensation statutes are entirely inapplicable to his claim.  Plaintiff relies on 4101.11 and 4101.12 only to establish Ohio's clear public policy of safety in the workplace.  For that purpose, these statutes are anything but obsolete.

Not only are the statutes not obsolete, they are a proper basis for Plaintiff's *Greeley* claim.  It is well-established that public-policy claims for workplace safety can be the basis of a wrongful-termination claim in Ohio.  *See Langley v. DaimlerChrysler Corp.*, 407 F. Supp. 2d 897, 909 (N.D.

-6-

Ohio 2005) (recognizing that workplace safety is a sufficiently clear public policy to base a *Greeley* claim on); *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St. 3d 77, ¶ 1 of the syllabus (2002) ("Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.").   Ultimately, the claim that Plaintiff brings is a viable *Greeley* claim, founded on available, appropriate statutes.  *See Kulch v. Structural Fibers, Inc.*, 78 Ohio St. 3d 134, 152 (recognizing that §§ 4101.11 and 4101.12 support Ohio's "public policy . . . that employees be provided with a safe work environment").   Defendants first contention is thus overruled.

### B.     Ohio Law Does Not Conclusively Establish that a *Greeley* Claim Based on Workplace Safety Cannot Be Brought Against Individuals

Second, Defendants state that Plaintiff's claim cannot be asserted against individuals, such as an employee's supervisor.  Defendants again straw man to the Workers Compensation statutes, and claim that there is no individual liability under those statutes.  That may be true for Workers Compensation claims.  But again, this is not a Workers Compensation action.  This is an action for wrongful termination in violation of public policy.

Ohio courts have already held that individual liability may exist in claims for wrongful termination in violation of Ohio's public policy in favor of workplace safety.  *Armstrong v. Trans-Service Logistics, Inc.*, No. 04CA015, 2005 WL 1301691, at *10 (Ohio Ct. App. 5 Dist. May 27, 2005).   In *Armstrong*, the plaintiff alleged that he was fired for reporting that his employer was violating food safety regulations by transporting meat at excessively high temperatures.  *Id.* at * 1. The defendant-supervisors argued that there was no individual liability under the plaintiff's cause of action.  *Id.* at *6.   The court disagreed, holding that the individual supervisors who fired the plaintiff could be sued.  *Id.* at *10.   The possibility of individual liability in this context has been

recognized by at least one other court in this District in *Praisler v. Ryder Integrated Logistics, Inc.*, 417 F. Supp. 2d 917 (N.D. Ohio 2006) (remanding a similar case after finding no fraudulent joinder because of the possibility of individual liability), and Defendants have cited no cases to the contrary.[5] To the extent Defendants cite Workers Compensation cases in support of their position, again, these cases are inapposite.[6]  *Coyne*, 183 F.3d at 493 (conflicting questions of law must always be resolved for the plaintiff).  Therefore, individual liability under this tort is at least a possibility, and does not prove fraudulent joinder of John Matthews.

> C.  **The Facts Show at Least a Colorable Possibility that Defendant John Matthews Qualifies As an "Employer" for Purposes of Liability**

Assuming that individual liability could possibly exist for an employer-supervisor, Defendants next argue that John Matthews was not, in any event, an "employer" under Ohio Rev. Code §§ 4101.11 and 4101.12.  The frequenters statutes only impose liability upon "employers." *Id.*  Previously, "employer" was defined in the Ohio Code at § 4101.01(C) as "every person, firm, corporation, agent, manager, representative, or other person having *control or custody of any employment*, place of employment, or employee." (emphasis added).  This section of 4101 was eventually repealed and never replaced.  However, courts have continued to use the

---

[5]Defendants argue that *Armstrong* and *Praisler* (because it relies entirely on *Armstrong*) are "totally distinguishable" and "inapplicable" to this case.  They claim that in *Armstrong*, the defendant-supervisors were clearly responsible for firing the plaintiff-employee, which is not the case here.  However, *Armstrong* by its very terms does not limit liability to those who actually make the firing decision; liability extends also to those who could prevent it but do not. *Armstrong*, 2005 WL 1301691, at * 8.  Therefore, the factual distinction that Defendants make does not mean that the *law* of *Armstrong* is inapplicable, it merely begs the question of whether John Matthews was a responsible party.  That is a question for the state court, this Court merely notes that, under *Armstrong*, individual liability is not impossible.

[6]Even if the Court found those cases analogous and compelling, moreover, they would still only show that Ohio courts are split on this issue, in which case the Court still must resolve the issue of liability for Plaintiff.

definition found in the old 4101.01.  *See, e.g.*, *Robinson v. Leach Constr. Co.*, No. 80534, 2003 WL 1894583, at *2 (Ohio Ct. App. 8th Dist. Apr. 17, 2003).  In fact, there are still multiple references to 4101.01 in the Ohio Code.  *See, e.g.*, O.R.C. 4749.01 (defining "employee" as having the "same meaning as in section 4101.01 of the Revised Code," even though 4101.01 technically no longer exists).

Whether the exact definition of 4101.01(C) applies or not, it is clear that having "control" of another's employment is still the ultimate test of whether an individual or entity can be deemed an "employer" for the purposes of workplace-safety liability.  Control over another's employment is a common-sense notion; it implies someone with *responsibility* for hiring or firing, who can  make, prevent, or impact employment decisions.  *See Armstrong*, 2005 WL 1301691, at * 8-*10.  Obviously, not just any supervisor can be liable for a wrongful termination.  Only someone who "personally participates in the tort" of wrongful termination can be sued.  *Armstrong*, 2005 WL 1301691, at * 10.  This includes generally "individuals responsible for the decision," or, in more specific terms, "each individual who has, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, any violation."  *Id.* at *8.  An individual "*who actively participates or acquiesces* in the discharge of an employee for reporting violations" cannot escape liability.   *Id.* at *8 (emphasis added).  To hold otherwise would frustrate the public policies that the Ohio statutes intend to uphold.  *Id.*  The essential inquiry, then, is: Did the defendant have some "control" over the firing of the plaintiff?  If the answer is yes, then the individual defendant clearly is an "employer" who can be liable for the firing of the plaintiff.

Applying this test to the current case, the Court must ask whether Defendant John

Matthews was an "employer" by virtue of the "control" he may have had over Plaintiff's employment. In other words, did he make the decision to fire Plaintiff, or could he, by virtue of his status as Terminal Manager, have somehow changed that decision? Defendants have submitted affidavits and emails denying that John Matthews was in any way responsible for the decision to terminate Jenkins. They point to Kirk Cummings and Ted Matthews as the persons making the actual termination decision.[7] They claim, essentially, that John Matthews, while he may have been an "agent" of the actual employer, did not participate in the alleged tort at all. As Defendants stress, John Matthews did not make the decision, he merely relayed it to Plaintiff. However, the fact remains that John Matthews participated in an open call with other company officials to review the decision to terminate Plaintiff Jenkins. This participation, while slight, is enough to defeat a claim of fraudulent joinder. Defendants have not ruled out the possibility of John Matthews' participation in the decision by acquiescence, which *Armstrong* clearly delineates as a possible means of control of employment. The fact that Defendants assert that John Matthews said nothing at the meeting does not mean he had no control over Jenkins' employment. The state court will have to determine whether, "by reason of his position in the corporation," John Matthews had "responsibility and authority either to prevent in the first instance, or ***promptly to correct***, any [wrongful termination]." *Armstrong*, at *8 (emphasis added). His position may have given him the right to object to the termination during the phone

---

[7]The emails submitted by Defendants purport to show Ted Matthews requesting permission to fire Jenkins, and Kirk Cummings subsequently approving the decision. If true, the emails would show that John Matthews in fact had no involvement in the initial decision to fire Jenkins. Plaintiff challenges the veracity of these emails by arguing that they do not contain reliable metadata and therefore cannot be trusted. For purposes of this remand analysis, the emails and their reliability are irrelevant, since John Matthews' possible liability could still stem from his failure to prevent the firing, and not his involvement in the initial decision.

call, and thus "correct" any wrongful acts taking place.  It is at least *possible*.  The ultimate question of how much control John Matthews had, and whether that control made him a responsible party regarding Jenkins' termination is not a question this Court can answer.  The Court is not prepared to say, based on the evidence and affidavits presented, that Jenkins does not have at least the prospect of a "colorable claim" for purposes of fraudulent joinder analysis.[8]

### D.   The Law is Ambiguous as to Whether 49 U.S.C. § 31105 Can Be an Adequate Alternative Remedy for Plaintiff, and Thus it Cannot Unequivocally Eliminate the "Jeopardy" Prong of Plaintiff's *Greeley* Claim

Finally, Defendants argue that joinder of Matthews was fraudulent because Plaintiff's entire *Greeley* claim fails.  Essentially, Defendants are claiming that no claim exists at all against any defendant because Plaintiff cannot make out all of the elements of his *Greeley* claim.[9]  Specifically, Defendants claim that Plaintiff cannot satisfy the required "jeopardy" prong of a *Greeley* action.  The jeopardy prong states that a *Greeley* tort claim can only go forward if there

---

[8]The Court agrees that it is likely that John Matthews was not truly an "employer" with "control" in this situation.  He was new on his job, did not know about Jenkins' complaints, and did not hand down the decision to terminate Jenkins.  John Matthews was merely given the responsibility of relaying that news to Jenkins.  Were this the only involvement John Matthews had, this Court may have been able to dispense with the idea that a colorable claim against John Matthews existed.  However, since John Matthews was at least present at a meeting where Jenkins' termination was reviewed, the Court has no choice but to find that there is a possibility that John Matthews took part in the decision, or could have acted to change it.  Whether or not his actions amounted to participation or acquiescence in the tort must be predicated upon a full record, and should be left to the trier of fact.

[9]Were the Court to agree with Defendants here, this would essentially also resolve Defendants' Motion to Dismiss; if the Court finds no colorable cause of action for purposes of fraudulent joinder, there would also be no cause of action as a matter of law under Fed. R. Civ. P. 12(b)(6).  However, the opposite is not necessarily true.  Just because the Court finds the possibility of a *Greeley* claim exists for purposes of fraudulent joinder does not mean that the remanding court must find that a claim exists for purposes of a 12(b)(6) motion.  As stated before, a fraudulent joinder analysis is similar, but ultimately more deferential to the plaintiffs than a 12(b)(6) analysis.  Furthermore, the state court will have more flexibility than this Court to decide the ambiguous questions of state law which can then guide its 12(b)(6) analysis.

-11-

is no other adequate statutory remedy available to the plaintiff.  Here, Defendants allege that

there is an adequate alternate statutory remedy, 49 U.S.C. § 31105, and thus that Plaintiff does

not need the *Greeley* claim to vindicate his interests.  However, Plaintiff does not plead 49

U.S.C. § 31105 as his source of public policy, and Ohio case law is unclear on whether a court

can inquire into the adequacy of remedies that come from statutes not relied upon by a plaintiff

as the source of their *Greeley* claim.  Under a fraudulent joinder analysis, the Court resolves

ambiguous questions of law for the Plaintiff.  Therefore, the Court is forced to ignore 49 U.S.C. §

31105 as a possible alternate remedy for Plaintiff.  Since there are no remedies available under

the statutes plead by Plaintiff, Ohio Rev. Code §§ 4101.11 and 4101.12, there simply are no

alternatives for Plaintiff besides a *Greeley* claim.  Thus the jeopardy prong and the *Greeley* claim

are not defeated for purposes of a fraudulent joinder analysis, and the claim is at least

"colorable."

Defendants claim that Plaintiff cannot meet the jeopardy requirement of his *Greeley*

claim because Plaintiff already has an adequate cause of action under federal statute 49 U.S.C. §

31105, and therefore does not need to bring a tort claim to remedy his situation.  There are four

elements of a *Greeley* claim that a plaintiff must make out.  They are:

> "1.  That clear public policy existed and was manifested in a state or federal
> constitution, statute or administrative regulation, or in the common law (the
> *clarity* element).
> 2.  That dismissing employees under circumstances like those involved in the
> plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
> 3.  The plaintiff's dismissal was motivated by conduct related to the public policy
> (the *causation* element).
> 4.  The employer lacked overriding justification for the dismissal (the *overriding
> justification* element)."

*Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 242 (2002) (quoting *Painter v. Graley*, 70 Ohio

St. 3d 377, 384 n.8 (1994)) (emphasis in original).  Defendant claims that Plaintiff is unable to make out the jeopardy element.  Under the jeopardy prong, if a statute already gives a plaintiff the specific right to seek relief and provides an adequate remedy, that plaintiff cannot instead bring a tort action based in common law for violation of the statute's policies.  *See id.*  Courts must query "whether the absence of a cognizable *Greeley* claim based solely on violation of [the plaintiff's named statutes] would seriously compromise the statutes' objectives."  *Id.* at 244.  In other words, is a *Greeley* claim the only way that the plaintiff's statutory rights can be protected? The public policy at issue is not in jeopardy in the absence of a *Greeley* claim if a plaintiff already has a statutory means of promoting the same public policy. The policy and the plaintiff both are already protected by a provided-for statutory remedy, and the tort remedy is superfluous.

This rule contemplates that when a state expresses its public policy in a statute, that policy can be enforced in two ways.  First, and most obviously, if a statute provides for a cause of action that can be brought for violations of the statute, a plaintiff could bring that specific statutory cause of action and obtain the specific statutory remedies specified in that statute.  For example, if a statute forbids sexual harassment, and a plaintiff is sexually harassed, the plaintiff can bring an action under the statute's remedy provision to obtain damages for being sexually harassed.  However, sometimes a plaintiff is not only sexually harassed, but also possibly fired for complaining about the sexual harassment.  In such a case, a remedy awarding a plaintiff damages for the emotional pain of the harassment would arguably be inadequate, because she also lost her job.  For such cases, some states (Ohio included) also allow employees who are *fired* in violation of a public policy contained in a statute to sue in tort for wrongful discharge.  *Painter v. Graley*, 70 Ohio St. 3d 377, 382 (1994).  In wrongful discharge cases, the plaintiff does not

-13-

avail himself of the statutory cause of action; instead, the plaintiff sues in tort for breach of the public policy contained in the statute.  Essentially, the jeopardy requirement is a preference for the statutory cause of action over the tort action.  It demands that if a provided-for statutory remedy will give all the relief a plaintiff would need for wrongful termination and will adequately protect the public policy, then the plaintiff must proceed under the statutory remedy, and not the tort remedy. "Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." *Id.*

With this preference for statutory remedies in mind, the question for the court then is whether the alternative statutory remedy is adequate to protect the plaintiff and the public policy. A court's next task is simple: compare the *Greeley* tort remedy to the provided-for statutory remedy, and see if they are comparable.  This inquiry is normally a straight-forward comparison where the alternate remedy is part of the same statute that the plaintiff relies on as his source of public policy.  *See, e.g.*, *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 249 (2002) (declining to allow a tort claim for wrongful discharge based on the policies contained in the federal Family and Medical Leave Act because the FMLA itself contained adequate statutory remedies); *Lewis v. Fairview Hosp.*, 156 Ohio App. 3d 387, 392 (Ct. App. 8th Dist. 2004) (holding that the plaintiff could not bring a wrongful-discharge action under the Ohio discrimination laws because the laws themselves already contained adequate remedies); *Coon v. Tech. Constr. Specialties*, No. 22317, 2005 WL 1875811, at *7 (Ohio Ct. App. 9th Dist. 2005) (holding that Ohio's workers' compensation statute contained an adequate remedy, and thus the plaintiff could not bring a separate wrongful termination public-policy claim under the same statute).  These cases

-14-

involve one statute, which contains both a public policy and a statutory remedy.  The court determines whether the statute's provided-for remedy adequately protects the public policy of the statute.

Comparing remedies is not as easy where, as here, the defendants claim that an alternate adequate remedy exists *outside of* the statute to which Plaintiff points as his source of public policy.  Indeed, it appears that, under Ohio law, a court may not *look* to altogether separate statutes as possible alternative remedies.  Ohio case law suggests that a court can only consider as adequate remedies those that are available within the same statute that is the basis for the tort. The Ohio Supreme Court has held in no uncertain terms:

> "[T]he issue of adequacy of remedies is confined to cases '[w]here right and remedy are part of the same statute which is the *sole source* of the public policy opposing the discharge.' . . . In cases of *multiple*-source public policy, the statute containing the right and remedy will not foreclose recognition of the tort on the basis of some other source of public policy, unless it was the legislatures' intent in enacting the statute to preempt common-law remedies."

*Collins v. Rizkana*, 73 Ohio St. 3d 65, 73 (Ohio 1995) (internal citations omitted).  *See also Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311, 315 (2007) (citing *Collins* and recognizing that "[w]hen public policy arises from more than one source, the analysis [is] different").

In *Collins*, the plaintiff brought a *Greeley* claim for wrongful termination after being sexually harassed.  *Id.* at 67.  The court noted that Ohio Rev. Code Chapter 4112 existed, providing explicit statutory remedies for injuries due to sexual misconduct.  *Id.* at 73-74. However, because other sources of public policy against sexual harassment also existed, the plaintiff had a separate basis for her tort, and her case was allowed to go forward, despite the

-15-

existence of another statute expressly providing sexual harassment remedies.  *Id.* at 74.  *Collins* clearly suggests that the inquiry into alternative adequate remedies is confined to situations where the public policy and the statutory remedy are contained in the same statute.  Thus, if a plaintiff points to a given statute for his tort claim, a defendant cannot point to a different statute as containing an adequate remedy for the same public policy.   As long as the plaintiff's statute is itself a clear source of the public policy, only remedies contained in *that* statute can be considered for purposes of a jeopardy-alternative-adequate-remedy analysis.

Similar to *Collins*, the remedy cited by Defendants comes from an entirely different statute than the one upon which Plaintiff relies as the source of his public-policy claim. Defendants claim that federal law 49 U.S.C. § 31105 more than adequately protects the Plaintiff. This federal statute provides that commercial motor vehicle employees may not be terminated for filing motor vehicle safety complaints.  *Id.* at § 31105(a)(A)(i).   The statute allows for administrative review, which can lead to abatement of the violation, reinstatement of the employee, compensatory damages, back pay, litigation costs, attorneys fees, and up to $250,000 in punitive damages**.**  *Id.* at § 31105(b)(3).   Arguably, 49 U.S.C. § 31105 covers the same scenario and vindicates the same policies as those contained in Ohio Rev. Code §§ 4101.11 or 4101.12.  Thus, Plaintiff's case is another instance of "multiple-source public policy" because there is more than one statute expressing the policy that employees should not be fired for reporting safety violations.  *Collins*, 73 Ohio St. 3d at 73.

Under *Collins*, where there is more than one statute expressing a public policy, the remedy contained in one statute cannot preclude a tort claim based on the other statute unless the legislature intended the preclusion.  *Id.* at 73. Unfortunately for defendants, 49 U.S.C. § 31105(f)

makes clear that the federal statute does not intend to interfere with state tort actions: "Nothing in this section preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law."[10]  It would seem, then, that §§ 4101.11 and 4101.12 can stand on their own as independent sources of action, regardless of the availability of a remedy under a separate federal statute.

Defendants, however, reject the teaching of *Collins* and claim that the issue of adequacy of alternative remedy is a proper question any time *any other statute* (not just the one relied on by a plaintiff) contains a similar right and remedy.  Defendants first cite to *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240 (2002) and *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311 (2007) for this proposition.  However, in both of those cases, the Ohio Supreme Court was considering the adequacy of remedies contained in the *same* statute relied upon by the plaintiffs.  *See Leininger*, 115 Ohio St. 3d at 319 (finding that the adequacy of remedies under Ohio Rev. Code ch. 4112 precluded a public policy tort based on ch. 4112)[11]; *Wiles*, 96 Ohio St. 3d at 249

---

[10]This Court recognizes that the quoted language is a preemption provision, and that the jeopardy issue should not be confused with preemption.  *See Collins*, 73 Ohio St. 3d at 73.  However, the provision is still useful as proof that the legislature did not intend to eliminate other remedies for similar wrongful-discharge violations.

[11]It is true that the plaintiff in *Leininger* relied upon one specific portion of ch. 4112 (§ 4112.14) and tried to limit the court's adequacy of remedy analysis to only the § 4112.14 remedy.  *Leininger*, 115 Ohio St. 3d at 319.  The court ultimately considered all of the remedies under ch. 4112 for their adequacy.  *Id.*  That is not the same, however, as a court looking to a different statute than that relied upon by a plaintiff.  In *Leininger*, the court held that, regardless of what portion of ch. 4112 the plaintiff relied on, all of the ch. 4112 remedies were already available to her.  *Id.*  The *Leininger* court merely decided that the alternate remedies actually already did apply to the plaintiff, since they were part of the same statutory scheme.  Here, Defendants try to impose a remedy on Plaintiff that is from an entirely different statute and would not be available to him under the statute he pled.

-17-

(holding that plaintiff's claim based on the public policy of the FMLA was not allowed because of the adequacy of the FMLA statutory remedies). The court in those cases was not considering a statute not relied upon by the plaintiff when evaluating adequacy of remedy.  Moreover, *Leininger* specifically references *Collins* and states that "it is unnecessary to recognize a common-law claim when remedy provisions are an essential part *of the statutes upon which the plaintiff depends for the public policy claim*." *Leininger*, 115 Ohio St. 3d at 317 (emphasis added).  Ultimately, neither case covers the situation facing this Court, and *Leininger* actually seems opposed to Defendants' request that the Court consider the remedies available in a statutory scheme upon which the Plaintiff did not rely.

Defendants next point to *DeMell v. Cleveland Clinic Foundation*, No. 88505, 2007 WL 1705094 (Ohio Ct. App. 8th Dist. June 14, 2007) to support their proposition that one statute can provide an adequate remedy for the violation of a separate statute.  In *DeMell*, the plaintiff sued her employer after she was fired for requesting remediation after being underpaid.  *Id.* at *1.  The plaintiff argued that her termination was in violation of the public policy set forth in the Ohio Minimum Wage Standards Act, Ohio Rev. Code § 4111.13.  *Id.* at *2.  The defendant argued that the federal Fair Labor Standards Act, not plead by the plaintiff, already provided her an adequate remedy.  *Id.* at *1.  The *DeMell* court agreed, holding that the FLSA, though a separate source of policy, still counted as an alternative means of promoting the same policy the plaintiff sought to vindicate.  *Id.* at *5.  The *DeMell* court claimed that *Collins* only "addressed a circumstance where the alternative remedy was not available to [the plaintiff because the statutory definitions excluded her]."  *Id.*  Thus, the *Collins* plaintiff could proceed on the basis of another statute because she was not eligible to sue under the statute to which the defendants had pointed.  *Id.*

-18-

The *DeMell* court's reading of *Collins* is arguably erroneously restrictive.  It is true that the statute relied on by the plaintiff in *Collins* did have a remedy that was procedurally unavailable to the plaintiff.  However, this was only *one* of two independent reasons why the plaintiff in *Collins* was allowed to go forward with her claim on a similar, but distinct statute stating public policy.  The *Collins* court specifically noted that "Collins presents a viable wrongful discharge claim under *Greeley* independent of R.C. Chapter 4112, . . . [therefore] there is no need to consider whether the remedies contained in R.C. Chapter 4112 should serve as a basis to reject her claim."  *Collins*, 73 Ohio St. 3d at 74.  The *DeMell* court ignored this first key holding of *Collins*, that if a plaintiff can make out his claim on one public policy ground, the defendant cannot force him to accept a remedy that springs from a separate source of similar public policy.

Ultimately, there is an ambiguity in the law that must be resolved for Plaintiff under a fraudulent joinder analysis.  At a minimum, there is tension between *DeMell* and *Collins*, leaving the law regarding adequacy of alternative remedy under an Ohio *Greeley* claim unclear.  On the one hand, *Collins* states explicitly that adequacy of remedies is only considered "where the right and remedy are part of the same statute which is the *sole source* of the public policy opposing the discharge."  *Collins*, 73 Ohio St. 3d at 73.  *DeMell*, on the other hand, did exactly what *Collins* forbade, and considered an alternative remedy that existed outside of the public policy statute to which the plaintiff cited.  *DeMell*, 2007 WL 1705094, at *5.  As this Court has repeatedly stated, under a fraudulent joinder analysis, all unresolved or ambiguous questions of state law must be resolved deferentially for the plaintiff.  *Alexander*, 13 F.3d at 949.  Because of the inconsistencies in the Ohio opinions, this Court cannot say unequivocally whether an outside,

federal statute dealing with motor vehicle safety bars a common-law tort claim based on an Ohio workplace-safety statute.  The Court must assume, for purposes of deference to Plaintiff, that, under *Collins*, 49 U.S.C. § 31105 cannot be considered as an alternative adequate remedy, since he has already made out his case for public policy based on different statutes, Ohio Rev. Code §§ 4101.11 and 4101.12.

Even assuming the Court could consider 49 U.S.C. § 31105 as an alternative remedy for Plaintiff, moreover, it would still be difficult for this Court to find, on the record before it, that those remedies are unequivocally adequate.  Defendants can point to no case where 49 U.S.C. § 31105 has been used to defeat a *Greeley* claim for safety in the workplace.  For purposes of fraudulent joinder, in the absence of direct authority addressing this issue from the state, the Court cannot say that there is no "colorable" possibility that the jeopardy element still exists here. The Court believes it is a better exercise of its discretion to allow the state courts to determine in the first instance whether the remedies under 49 U.S.C. § 31105 are adequate to protect Ohio's public policy goals.  In the absence of direct authority on this issue, the Court cannot and will not decide this issue for the state in the context of a fraudulent joinder analysis.

Since 49 U.S.C. § 31105 must be ignored for the time being,  the only statutes this Court can consider in assessing the availability of alternative remedies are the very statutes upon which Plaintiff relies.  Neither Ohio Rev. Code § 4101.11 nor § 4101.12 provide any statutory remedies.  Thus, there simply are no other remedies to which the Court can look to defeat the jeopardy requirement of Plaintiff's claim.  Indeed, it seems that the only way Plaintiff can vindicate these statutes is through a common-law tort action.

Ultimately, the ambiguity in the law prevents the Court from considering 49 U.S.C. §

31105 as an alternative remedy available to the Plaintiff, and there is no other remedy to consider under § 4101.11 or § 4101.12.  Therefore, the Court again must defer to the possibility of Plaintiff being able to establish the jeopardy element of his *Greeley* claim.  Defendants final contention is overruled.

IV.     **CONCLUSION**

  In sum, this Court cannot conclude that, construing the ambiguous facts and law in favor of Plaintiff, there is no possibility of a "colorable claim" against Defendant John Matthews.  A *Greeley* claim for workplace safety can clearly rest on Ohio Rev. Code §§ 4101.11 and 4101.12. It is not clear, as defendants suggest, that no individual liability can lie under those statutes. Furthermore, the facts judged in the light most favorable to Plaintiff suggest the possibility (although slight) that Defendant John Matthews may have had enough "control" over Plaintiff's employment to render him liable as an "employer" under the frequenters statutes.  Finally, the law is not unambiguous enough for this Court to say that 49 U.S.C. § 31105 can even be considered as an alternate source of a remedy for the Plaintiff, let alone an adequate one.

  For the foregoing reasons, the Plaintiff's *Motion to Remand* (Doc. 19) is **GRANTED**. This case is hereby **REMANDED** to the Medina County Court of Common Pleas.


  **IT IS SO ORDERED.**


          **s/Kathleen M. O'Malley**
          **KATHLEEN McDONALD O'MALLEY**
          **UNITED STATES DISTRICT JUDGE**

  **Dated: January 29, 2010**